Good afternoon. My name is Amanda Parker, and I'm here today on behalf of Appellants Nationwide Bi-Weekly Administration, Loan Payment Administration, and Mr. Daniel Lipsky. And as the parties have done throughout this case, I'll refer to the appellants collectively as Nationwide. And I'd also like to reserve two minutes for the model. Mr. Flowers, who just argued for Nationwide, explained why the District Court in the prior case erred in abstaining under Younger. The facts for purposes of Younger are virtually identical here for all relevant purposes, and so for the reasons Mr. Flowers explained, the District Court erred in abstaining under Younger in this case as well. When did the case get to exactly the same stage? Was there a briefing on the appeal? Yes, Your Honor, we filed an opening brief in April, which was before the State Court case was filed. Now, if the Court has any questions on Younger, would you like to move on to address the District Court's denial of the motion for appeal? Sam's position is to include a patient in the exam. But if there'd been a denial of a patient in the exam, the District Court of Appellate Justice would still issue a case in which a patient is in the exam, and that would be sufficient. That would be an acceptable rule. I'm sorry, I didn't want to do a simple acceptable. If it's not acceptable, what are you going to do about it? I'm going to ask what you think our rule should be. I don't think you, as Mr. Flowers explained in the prior case, I don't think you need to go that far to decide that the District Court erred in abstaining under Younger here. I think it's clear from the District Court's decision that she engaged in the merits of the case, extensively analyzing whether Nationwide was likely to succeed on the merits of its First Amendment challenge. So you're saying we should examine the District Court's opinion, and then whatever the District Judge expresses having erred over one of the merits of the NLCC's, then that would be sufficient to defend the other? I think as long as the District Court's decision is not a summary denial, but reflects substantive engagement in the merits, I think it's sufficient. What's the summary denial as opposed to one that examines the merits as well as the evidence? Well, perhaps where the District Court simply mentions that the party is unlikely to succeed on the merits without any reasoning or analysis. No, it is a question of how much reasoning the District Court has in the particular case. It would be, Your Honor, if that was the test that is adopted. But again, you don't need to draw a line here because the District Court here did engage with the merits of the case in its extensive opinion on the First Amendment challenge. What would be the barrier, then, to stop a defendant from sort of issuing a preemptive strike by bringing injunction or relief in every case in which they foresee civil enforcement action? I'm sorry. What would, if that were the rule, what would stop a defendant, like nationwide, from bringing injunctive relief to start the clock ticking and get to an analysis of likelihood of success and the injunctive relief standards? Because they're the ones that are pulling the trigger on the start of the litigation, not the defendant. I think that's where it would be important to look at it. So if, for example, a defendant, a public defendant in a federal case, brought what otherwise would be a frivolous preliminary injunction motion, I think the District Court's opinion rejecting that motion could reflect that it was frivolous and there wouldn't be as substantial reasoning on the merits as there was in this case. It puts the District Court in a precarious spot, though, of explaining in length how frivolous the action was, does it not? It could, but I think that's a consequence of the Supreme Court's standard that it's adopted for younger, the proceedings of substance on the merits and then embryonic stage. Younger is not meant to keep federal plaintiffs out of court. I'd like next to address the District Court's denial of a nationwide motion for a preliminary injunction, which, as recognized in the prior cases, progressively before the Court. The California statutes at issue here prevent Nationwide from advertising unless it says that its advertisements are not authorized by the lender. That is true even though Nationwide says on its envelopes that it's not affiliated with the lender, and that's true even though Nationwide says in the letters that it's not affiliated, connected, associated with, sponsored, or approved by the lender. And it's true whether or not the offer letters that Nationwide sends us are misleading. The statute cannot survive a central Hudson review. The district attorneys, in fact, don't even argue on appeal that it can satisfy central Hudson. The district attorneys have the burden to show that the restrictions here directly advance the substantial state interests that are normalized in the statute. It strikes me that the dispute between what your client is refusing to do, that the attorney general says he has to do, is not particularly onerous, in light of what he's doing. Is this a question of where are you going to put the disclaimers, essentially, and how big a type is going to be? I mean, it doesn't make a lot of sense to me. But the statute is not giving a case in which this is. So, including the disclaimers on the envelope, I'm sorry? Including the disclaimers on the envelope, in fact, four times in the letter, would be a duly burdensome in this case. And there's no evidence in the record that I'm going to say it has to be four times. I thought it had to be next to the first statement, the first reference to the loan. So it would be the first and most prominent reference to the lender's name, which could be in two different places. And then there's also... The first and most prominent is on two places, one place. Go ahead. And the consumer loan amount would also be how their place where four letters sent prior to December 2013, where nationwide would have needed to make additional disclosures. So that's where I think you have potential four times. And that's the whole five. Is there anything else to that? You say, yes, that's correct. We don't object to disclaiming that we are not sponsored by or affiliated with the lender. In fact, we already do that both on envelope. We say we're not affiliated with the lender. And in the letters, we make clear that we're not affiliated with the lender and not sponsored by the lender. It also says something you have to say, that this letter wasn't sponsored, wasn't compiled by them. Is that the problem? It didn't say that? We don't say that. These letters do not say that nationwide advertisements are not authorized by the lender, which is what the statute would require. And there's no evidence in the record that requiring But everything they want you to say is true. Not that the advertisements are not authorized. Of all the statements, they're the ones you make are true statements. They're perhaps literally true, but they're misleading because it suggests that the lender has the authority to permit or not to permit nationwide advertisements or that the lender can prohibit the borrowers from participating in nationwide's program. Those are not true. And it puts nationwide at a competitive disadvantage by suggesting to the borrower that even opening a letter or asking questions about the program or participating in the program is somehow illegal or inappropriate, when that's not true at all. And that comes from a statement that this has been authorized by the lender? That's correct. The phrase is not authorized by the lender. It implies that there's something wrong with the letter. Or that the borrower has that statement that it's not authorized by the lender, and you can't even make that statement anyway. We don't use the phrase not authorized by the lender, certainly, Your Honor. I thought you did. Something very like... I see that my eight minutes are up, and I'd like to reserve the remainder of my time for a bubble. Thank you. Thank you very much. Thank you. Please support Brian Case at the Vernon County District Attorney's Office and let me hold it for the Monterey County District Attorney's Office. Your Honors, I would like to return to the issue of Gunnar. And the court asked Mr. Flowers, what are we supposed to do here? What are we supposed to do in evaluating the embryonic stage? Mr. Flowers suggested the court apply a bright-line rule. I suggest to the court that that's the wrong approach. Well, let me suggest this approach to the court. There are guideposts in our case law from the lower courts. Although the Supreme Court has not provided very clear guidance on what the embryonic stage is, there are guideposts. And the case of Hawaii versus the city of Oakland illustrates that it's not simply about bright-line rules here. That case involved core First Amendment free speech issues, involving the debate between abortion protesters and people who opposed those views. In that case, there was a TRO that was denied. But the court expressed views about the rights and interests of the parties, and in doing so, reached concerns of federalism that Gunnar is all about. So if you applied a bright-line rule there, about the September grant, or denial of a TRO, you wouldn't be able to see the whole picture of these. Gunnar requires, quote, a careful approach. So we have to look at each case individually, and bright-line rules really are not helpful. Isn't one of the ploy factors whether a party changed in reliance on things that had happened in the litigation? I think that's exactly what Hawaii said, and that did not happen in this case. The court never reached the merits. It never telegraphed any messages to the parties about what their rights were. Well, certainly telegraphed a pretty strong message to the parties about what her view of the merits was. They were in a view for the state, but it's not, or I think the government, in this instance, the counties. But, so, did she? Well, there is the denial of the primary injunction motion. It's very different from what happened in Hawaii where the court told the parties they told the city they needed to amend their ordinance, and they acquiesced, and then did that within two months. And that was a strong suggestion. Here, it was a legal analysis of the nationwide request. Well, but that relates to the notion that it matters which way the district court decides. Because the district court decides to grant the primary injunction, then it gives a problem. You'd say, well, what's your say? Let me ask you. I think you're suggesting that outcome might matter or might not. I think outcome does matter. It's a factor. How can that possibly be the case? But when the issue is the jury of engagement, no? Well, it's a factor. Under the Ninth Circuit precedent of Fresh International, where the court said it may be that the issuance of the TRO as opposed to the denial of one is a proceeding of substance unbearable. That's the most applicable one. The TRO and the primary injunction are completely legible for this purpose. I think there are differences, as Your Honor has pointed out. But I think the same thing this year is that both can have severe consequences for the rights of the parties. For example, Hawaii v. Midkiff, which a lot of the Ninth Circuit case law on the subject is based upon, there was a TRO that was issued for several months, which prohibited a state from bringing in what was an eminent domain action against the landowners. That was a significant act of the federal court, which had a bearing on the rights of the landowners. Let me ask you, J.J., in the other case, what's the state of disputes in the state court? Trials set for June 23, 2017. It's a different case, but it's also set. Not only did the state join with our district attorney's offices, but also the Alameda County district attorney's joined, and so it's a joint enforcement action set for trial. And also under the other statute, this is a case which is a completely different statute? Yes. That's all? That's all there. I see. And another guidepost that I suggest this court can use is from the Seventh Circuit, and that's a Mannheim video versus the County of Cook. And in that case, the court said, when deciding on abstention, the federal courts are not simply what issues are no longer a part of the case, but also what issues are left to decide and the progress of the court in deciding the remaining issues. So we have, in this case, a situation where the district attorneys can file the motion to dismiss, taking issue with something as simple as whether or not these might be in the proper parties, whether or not the state should have been the indispensable party who was not making the district attorneys in a position of defending a facial attack on state law. And an anti-slap motion was pending, which provides that district attorneys have First Amendment rights to file a motion. No motion to dismiss? And those are all parts of the motion to dismiss, yes. And what else was filed? Was also a Paris motion to dismiss? And 12b-6 motion to dismiss, yes. So all those were outstanding issues, and the complaint was still being formulated. There was no answer in this case, which is also important. And that goes back to Hicks. In the Supreme Court's decision in Hicks, where they pointed out that there was no answer. Now, another case is Wise v. Nordell, and that's a district court decision out of Southern Districts of California, where the court held an operative complaint is still in the process of being formulated and abstained. In that case, there were nine months before a criminal proceeding was brought against a criminal defendant. And, again, I'm not suggesting that these are bright-line rules, but they're high-floating factors. And I would ask this court, in considering its final holding on this matter, to cite not only Hawaii v. City of Oakland, but the Delworld bookstores, all of these cases provide a guide to us. And, most importantly, we have Politoff v. Collins, which provides the rule that a federal proceeding may be deemed to have passed beyond the embryonic stage if the federal court has conducted extensive hearings on a motion for preliminary injunction or granted a motion. So there we have a very strict procedural approach. Let's apply that test. There was no extensive hearing. There was a preliminary injunction decision that was issued without any oral argument. So there was no hearing. Number two, did the court grant such a motion? No, it didn't grant such a motion. And that rule comes from Delworld bookstores and the Supreme Court's decision in Hawaii v. Mitchell. Can I ask a question I asked before, which is if the court disagreed with you on the anchor issue, can we reach the merits of denial of preliminary injunction? Your Honor, I submit that the preliminary injunction matter in our case is moot. The nationwide biweekly has asked for very specific relief to make sure that the district attorney has never brought the action in the first place. Well, the action has been brought. It was brought in May of 2015. It's been pending for many months. So you said it has to bring a different preliminary injunction? Correct. It has under the authority of Indefensive Animals v. Department of Interior, where plaintiffs sought to prevent the roundup of wild horses on federal lands in the roundup that already occurred. So I think under the doctrine of Mercer, this court could consider, as Mr. Flowers pointed out, the underlying preliminary injunction decision, but in this particular case, that this determination is moot. There's no actual controversy anymore. If we were going to go back to the district court, the district court would have to entertain a newly formulated motion, which dealt with the current status of the case. And they didn't ask for a preliminary injunction, including the application of the statute to them? The way they worded the request for relief  from attempting to enforce the statute. It's a fact that one case was filed. If we were to conclude the case, that the Younger case could still go forward, why couldn't he still enjoin the enforcement of that statute? Well, I think the court could. If you look at the purpose of Younger's decision, that would be a very grave act. That's what happens when you file an affirmative action challenging a statute as unconstitutionally applicable to you. To answer your question, it was touching on the point that at this juncture, for a court to enjoin ongoing state proceedings brought by many jurisdictions, including jurisdictions that aren't the party in this action, would be an act of federalism, which Younger is designed to prevent, would be direct inference, and the proceedings are actually underway, and in June are going to be in trial. But then you're essentially co-opting the Younger issue. In other words, where do you lose the Younger? Let's assume you lose it. Then what happens to Younger? Then we get to your question of whether or not there's jurisdiction. Now you're arguing the same thing all over again, that there's no jurisdiction over the... I'm going to ask you a technical question. Do we have the ability, jurisdiction, to decide the merits of the plenary injunction appeal? We don't exactly have a plenary injunction appeal. The plenary injunction appeal, as such, has been dismissed. To answer the technical question, there are two parts. In general, yes, the court can address plenary injunction much in this situation, but in this case... This court should be at its final judgment and therefore it's wrapped in, is that right? Under the doctrine of merger. Okay. But in this case, the plenary injunction motion is removed. The whole framework for a harm that would be presented to the parties is totally different. Well, it's not moved. You're arguing that it would be a federalist problem, so you're arguing Younger again. But it's not moved. We could issue such an injunction. I mean, this court could... We could approve such an injunction. You're saying we shouldn't, but that's a different question. I think that also touches on the fact that the report is not in the court of first precedence, the court of review, and the trial court has never had the opportunity to weigh in the current status of... So you're saying we should re-manage the current status. That's possible. Yes. So, in conclusion, what I would like to suggest to the court is that it's possible to rule under Younger v. Harris that the district... that in this case, the trial court's decision to obscene based on the Ninth Circuit procedural high-cost polycount versus columns and the Ninth Circuit actual intervention test under Hoye v. City of Oakland was correct. Thank you. Any other questions? Thank you, Your Honor. I'd like to briefly address two of the claims made by the housing council. The first release to Hoye. There, the court did mention that the district court's actions had resulted in changes in the parties' positions, but that was just one of the factors that the court considered. There, the district court expressed reservations about the merits of the claim, and here, the district court rules on the plaintiff's success on the merits of the claim. So the fact that there might not have been any change in circumstances here is not dispositive. Also, polycounts involved in the denial of a temporary restraining order, not a preliminary injunction, is here. Returning to the First Amendment issue, there's no evidence in the record that adding not authorized by or requiring the font and location disclaimers could in any way prevent consumer deception. There's also no evidence that Nationwide's offer letters with the disclaimers in them are misleading. And if authorized by is similar to why Nationwide is not disclosing, that just demonstrates that requiring Nationwide to say not authorized by serves no purpose in preventing consumer deception. For that reason, it's unduly burdensome and does not advance the city's interest in, in fact, a voting council. We have no argument that it can satisfy central Hudson on appeal. We still need to think about this if the court has no further questions. Thank you very much.
judges: Reinhardt, Berzon, Montgomery